Mississippi River Logging Company, Respondent, vs. Blue Grass Land Company, Appellant.

*February 1—February 19, 1907.*

*Vendor and purchaser of land:* Bona fide *purchasers: Notice of unrecorded deed.*

1. Defendant's grantor, a corporation, knowing that there was no recorded conveyance of the title of H., a former owner of certain parcels of unoccupied land, but that other persons were executing conveyances thereof as if they owned them, obtained from the heirs of H. a quitclaim deed of the lands for a nominal consideration, the agent of the corporation falsely representing to said heirs that H. had lost his title by failure to pay taxes, and the heirs stating that they had no title. *Held,* that the corporation had information sufficient to put an ordinarily prudent man upon inquiry as to the rights of those claiming under a prior unrecorded conveyance from H., and was therefore not a *bona fide* purchaser.

2. When the defendant, also a corporation, purchased said lands it knew that they had been conveyed to said H. by one C. by warranty deed for a substantial consideration, and that C. had afterwards taken tax deeds thereof based on tax sales made prior to his conveyance to H.; that C. had thereafter quitclaimed the lands to W., and that W. had conveyed them to plaintiff by warranty deed for ample consideration; that ten years later its grantor had obtained apparent title by quitclaim from the heirs of H. for a nominal consideration; that the lands were valuable; and that since the quitclaim deed from C. to W. the taxes had been regularly paid. It appears that inquiry made of W. would have disclosed the existence of an unrecorded deed from H. to W. *Held,* that defendant was chargeable with notice of such unrecorded deed.

APPEAL from a judgment of the circuit court for Vilas county: W. C. SILVERTHORN, Circuit Judge. *Affirmed.*

This is an action brought by the grantor in a warranty deed to remove a cloud from the title of fifteen parcels of unoccupied land in Lincoln county, of which eleven parcels are forty-acre tracts and the balance fractional lots. Both parties claimed title under John Comstock, who acquired a valid title to the lands by tax deed on the sale of 1878, dated and recorded June 4, 1881. It appears that April 7, 1882, Comstock and wife executed a warranty deed of the lands in question, with twenty other descriptions, to Frank D. Harding, which deed recited a consideration of $4,100 and was recorded April 10, 1882. After making this deed Comstock took three other tax deeds—one in 1882 on the sale of 1879, one in 1883 on the sale of 1880, and one in 1884 on the sale of 1881, all of which were seasonably recorded. It further appears from the record in the register's office that Comstock deeded this land with a large number of other parcels to the Wisconsin River Land Company for a consideration recited of $15,000 by quitclaim deed dated February 18, 1885, and recorded December 17, 1885; that the Wisconsin River Land Company deeded the lands in question to the plaintiff for a consideration averaging $236.66 a description by warranty

deed dated November 3, 1892, and recorded November 25, 1892.

Thus the record title stood in February, 1902, when the Home Investment Company (defendant's grantor) contracted in writing to convey to the defendant about 40,000 acres of unoccupied land for the uniform price of $2.50 an acre, abstracts to be furnished and deeds delivered within ninety days thereafter. Whether the lands in question were included in this contract is not certain. No deed from Frank D. Harding or his heirs appeared in the records at this time, nor did the Home Investment Company have actual knowledge that any deed had been made by him; but it appears as matter of fact that Harding and wife on the 28th of June, 1886, conveyed the lands in question with others (being the same lands conveyed to him by Comstock) to the Wisconsin River Land Company for a consideration of $7,000 by a deed with warranty against his own acts, which deed, however, was not recorded until July 20, 1903.

The Home Investment Company was a corporation dealing in northern Wisconsin lands and tax titles, and through its president had access to a tract index of the lands in question and had knowledge that other parties than Harding or his heirs were making conveyances of the lands in question and assuming to deal with them as owners. In March, 1902, the Home Investment Company sent an agent to Hudson, Wisconsin, to obtain a quitclaim deed of the lands in question from the heirs of Harding (the deceased intestate). This agent succeeded in obtaining a quitclaim deed from the heirs covering all the lands deeded by Comstock to Harding for the sum of $200. The court found on sufficient evidence that he obtained this deed by representing to the heirs that their father had owned these lands in his lifetime, but had not paid taxes on them for twenty or thirty years, and that now they had really no interest in them, and, further, that the Home Investment Company was in fact the owner and expected to sell

them to some eastern party who wanted the title cleared in
this way. The court also found that the heirs told the agent
at that time that they did not think or consider that their
father had any interest in the lands. In August, 1902, the
Home Investment Company deeded the lands in question to
the defendant by warranty deed as a part of the lands con-
tracted for in February, and soon after furnished an abstract
of title which was examined by the defendant's attorney and
which showed the deeds before described which were on rec-
ord in February, 1902, with the addition of the deed from
the Harding heirs. No part of the consideration was paid
prior to the examination of the abstract. This deed recited
a consideration of $2.50 an acre, which was in fact the fair
value of the land and known to be such by both parties. It
was recorded September 30, 1902. The deed from Harding
to the Wisconsin River Land Company was not recorded un-
til the 20th day of July, 1903, having been kept prior to that
time in the office of the company at Eau Claire, Wisconsin,
where it could have been found had inquiry been made for it.
From 1886 up to November, 1892, the Wisconsin River Land
Company paid all the taxes on the lands in question, and
from November, 1892, up to the time of the commencement
of this action the plaintiff paid such taxes, and the fact that
such payments were duly made appears in the proper town
and county offices. The plaintiff conveyed the lands by war-
ranty deed to the Chippewa Lumber & Boom Company prior
to the commencement of this action.

On these facts the court found that both the Home Invest-
ment Company and the defendant had notice of facts which
should have put them upon inquiry as to the existence of the
unrecorded deed, which inquiry would have resulted in its
discovery, and that for this reason neither of them was a pur-
chaser in good faith, and that the Chippewa Lumber & Boom
Company was the owner in fee simple. Judgment being en-
tered in accordance with this finding, the defendant appeals.

*A. W. Sanborn,* for the appellant. ·

For the respondent there was a brief by *Reid, Smart & Curtis,* attorneys, and *Neal Brown,* of counsel, and oral argument by *R. M. Smart.*

WINSLOW, J.    The only question presented which is deemed necessary to be considered is whether the defendant is in the position of a purchaser in good faith without notice of the prior unrecorded deed from Harding to the Wisconsin River Land Company.

The principle is well understood that one who purchases with knowledge of an outstanding claim of title or information sufficient to put an ordinarily prudent man upon inquiry is not a *bona fide* purchaser. *Prickett v. Muck,* 74 Wis. 199, 42 N. W. 256.    We can entertain no doubt that the Home Investment Company had such information.    It knew of the deed from Comstock to Harding, executed in 1882, by which these lands with twenty other descriptions had been conveyed for $4,100.    It had access to a tract index of the title.    It knew that as far as the records showed Harding had never conveyed his title and that other parties were executing conveyances of the lands as if they owned them.    In this situation it sent an agent to the heirs of Harding to obtain a quitclaim deed from them for a practically nominal consideration, and that agent stated to the heirs that their father had no title, and the heirs confirmed that statement.    This amounts to a confession that the title sought was not a real title but only a nominal one.    It demonstrates beyond cavil that the company knew that it was buying a purely speculative title which had only the appearance of validity.    The fact that it was buying for $200 lands less than half of. which it proposed at once to transfer to others for $1,500 and which were in fact worth the latter sum only adds certainty to the conclusion that it knew facts entirely discrediting the title which it was getting.    It can hardly say now that it knew

no fact in May, 1902, tending to throw doubt on the Harding title, when it appears that it then bought that title for a song on the statement that it was worthless.

As to the defendant the conclusion is the same, although the facts are somewhat different. Its attorney had examined the abstract before the consideration money was paid. By this examination it was informed of the deed from Comstock to Harding in 1882 by which thirty-five descriptions were conveyed for a consideration of $4,100; also of the subsequent tax deeds taken by Comstock and his quitclaim to the Wisconsin River Land Company in 1885; also of the warranty deed of the last-named corporation to the plaintiff by which the lands in question were conveyed for an average consideration of $236.36 a description; and it was also informed of the quitclaim deed ten years later by the Harding heirs to the Home Investment Company by which it obtained apparent title to said thirty-five descriptions for a consideration of $200 or about $5.70 a description. It knew also that the taxes had been regularly paid or redeemed by some one, that the lands were actually worth $1,500, and that it was about to pay that sum for them. Surely these facts were ample to suggest a robust doubt as to the validity of the Harding title. Here is no question of constructive notice of a collateral deed not in the chain of title, but the question is as to the effect of actual knowledge of the fact that other persons not in the apparent chain of title have been deeding the land as if they were owners for substantial considerations, in connection with the fact that the apparent title is based on a quitclaim deed executed but yesterday for a nominal consideration.

The defendant's attorney, of course, knew the general legal proposition that the after-acquired title of a grantor in a warranty deed inures to the benefit of his grantee; hence he knew that apparently the tax deeds subsequently taken by Comstock were merely so many additional supports to the Harding title. Nevertheless he saw by the abstract that Comstock assumed

to quitclaim his subsequently acquired title to the Wisconsin River Land Company, which company thereafter deeded the land by warranty deed for ample consideration to the plaintiff. Here, too, was certainly an unusual circumstance well calculated to stir the prudent mind to inquiry.

The mere recording of a deed of lands is an assertion of title. Sec. 3186, Stats. (1898); *Maxon v. Ayers,* 28 Wis. 612; *Broderick v. Cary,* 98 Wis. 419, 74 N. W. 95. Actual knowledge that a stranger to the chain of title has placed a deed of the land on record is held to be sufficient to put an intending purchaser on inquiry, especially if the title which he is about to purchase appears to have been acquired for a merely nominal consideration. *Dillon v. Shugar,* 73 Iowa, 434, 35 N. W. 509; *Knapp v. Bailey,* 79 Me. 195, 9 Atl. 122; *Clark v. Holland,* 72 Iowa, 34, 33 N. W. 350; *Doran v. Dazey,* 5 N. Dak. 167, 64 N. W. 1023, 57 Am. St. Rep. 550. In the present case it appears that an inquiry made of the Wisconsin River Land Company at its office would have resulted in the finding of the missing deed and the explanation of the singular state of the record. The defendant chose to make no such inquiry, and must abide the results.

*By the Court.*—Judgment affirmed.